## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| BRANDI LYNN HOLDER, | ) | |
| | ) | No. 09:14-cv-04589-DCN |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ANGELIA RAWSKI, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Bristow Marchant's report and recommendation ("R&R"). The magistrate judge recommends that the court deny Brandi Lynn Holder's ("petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the court adopts the R&R, denies the petition, and grants respondent Angelia Rawski's ("Rawski") motion for summary judgment.

## I.  BACKGROUND[1]

Petitioner was convicted of homicide by child abuse after a jury trial on February 6 through 9, 2006. The Honorable C. Victor Pyle, Jr. sentenced petitioner to twenty-five years imprisonment. Petitioner filed a timely appeal, and the South Carolina Supreme Court affirmed her conviction and sentence on May 4, 2009. On April 20, 2010,

---

[1]    Because petitioner does not have any objections to the procedural background as fully set forth in the magistrate judge's R&R, the court will dispense with a lengthy recitation thereof and will direct the parties to pages 1 through 6 of the R&R. See Pet'r's Objections 1; R&R 1–6. The court will only provide an overview of the procedural background of this case.

1

petitioner filed an application for post-conviction relief in state circuit court, setting forth thirty-seven specific instances of ineffective assistance.  The PCR judge denied the requested relief on June 25, 2012.  Petitioner filed a timely appeal of the PCR court's order.  The South Carolina Supreme Court denied petitioner's petitioner for writ of certiorari on July 24, 2014, following which petitioner moved for a rehearing.  The petition for rehearing was denied, and the remittitur was filed on August 22, 2014.

Petitioner subsequently filed the present writ of habeas corpus in this court on December 3, 2014.  Petitioner raises the following six grounds for relief:

> **Ground One**: Petitioner's right to confront all the witnesses against her, as guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution, as extended to the States by the Fourteenth Amendment, was violated when the Trial Court permitted a law enforcement officer to relate to the jury what Petitioner's co-defendant, [Mark Anthony] Martucci, had told him during interrogation.

> **Ground Two**: The Petitioner's right to effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution, was violated in the trial court when the Trial Counsel made multiple errors and omissions in his handling of State witness, James Darren Turner, the Petitioner's ex-husband.  Trial counsel failed to object to irrelevant and highly prejudicial testimony, failed to make a motion to strike said testimony, failed to make a motion for curative charge or for a motion for mistrial in the wake of this damaging testimony.  Trial Counsel compounded the prejudice of these errors and omissions when he himself characterized the Petitioner as "not the best wife" when cross-examining the witness.

> **Ground Three**: The lower court err[ed] in denying the Petitioner's application for Post-Conviction Relief where the record below demonstrates Trial Counsel violated her Sixth Amendment right to effective assistance of counsel by failing to adequately reference evidence in support of the defense in his closing arguments to the jury where he failed [to] point out to the jury that there was evidence that the Petitioner herself was sick the day before her son died with something that made her, like her son, throw up and therefore, that she had every reason to believe the child's illness was from the same source as her own.  Likewise, in closing arguments Trial Counsel failed to draw the attention of the jury to

2

the fact that the testimony of multiple State witnesses concerning bruising having been previously observed on the victim in fact referenced only a few incidents recalled by multiple witnesses.

**Ground Four**: The lower court err[ed] in denying the Petitioner's Application for post-Conviction Relief where record below supported her allegation that Defense Counsel violated her right to effective assistance of counsel, as protected by the Sixth and Fourteenth Amendments to the United States Constitution, by failing to present numerous readily available character witnesses on behalf of the [Petitioner].

**Ground Five**: The lower court erred in denying Petitioner's Application for Post-Conviction Relief where she demonstrated in the lower court that her Sixth Amendment right to effective assistance of counsel was violated when Trial Counsel neglected to introduce evidence, specifically a SLED forensic Services Lab Report, documenting that there was a mixed DNA sample taken from bite marks on the victim which yielded DNA not inconsistent with the victim <u>and</u> DNA from an unknown individual with XY Amelogenin meaning the DNA came from an unknown <u>male</u> contributor.

**Ground Six**: The lower court err[ed] in denying the Petitioner's Application for Post-Conviction Relief where record below supported her allegation that her right to effective assistance of counsel, as protected by the Sixth and Fourteenth Amendments to the United States Constitution, was violated in the trial Court when Trial counsel failed to object to a confusing and incomplete answer given by the trial judge in response to a question from the jury concerning verdict options.

<u>See</u> Attachment to the Petition, 6–7, 11–15.

Rawski filed a motion for summary judgment on January 29, 2015.  Petitioner filed a response in opposition to the summary judgment motion on May 5, 2015.  The magistrate judge issued an R&R on July 17, 2015.  The court granted petitioner's request for an extension of time to file objections to the R&R on August 7, 2015.  Petitioner filed a second motion for an extension of time, which the court granted on September 3, 2015.  On September 4, 2015, petitioner filed <u>pro se</u> objections to the R&R, although she was represented by counsel at the time.  Her attorney filed a reply on September 21, 2015,

3

requesting that the court not consider the pro se objections.  The court granted

petitioner's third request for an extension of time on October 9, 2015.  Petitioner filed

objections to the R&R on October 20, 2015.  The motion has been fully briefed and is

now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the

magistrate judge's R&R to which specific, written objections are made.  28 U.S.C.

636(b)(1).  The court may adopt the portions of the R&R to which the petitioner did not

object, as a party's failure to object is accepted as agreement with the conclusions of the

magistrate judge.  Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of

the magistrate judge carries no presumptive weight, and it is this court's responsibility to

make a final determination.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

This court has jurisdiction under 28 U.S.C. § 2254 to hear a petition for a writ of

habeas corpus made by a person imprisoned pursuant to a state court proceeding.  A

petitioner must exhaust all available state court remedies to properly assert his claims in

federal court.  28 U.S.C. § 2254(b)(1)(A).  Absent cause and prejudice or a fundamental

miscarriage of justice, "a federal habeas court may not review unexhausted claims that

would be treated as procedurally barred by state courts."  Longworth v. Ozmint, 377 F.3d

437, 447-48 (4th Cir. 2004).  To sufficiently exhaust available state court remedies, the

petitioner must "give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review

process" and "fairly present[] to the state court both the operative facts and the

controlling legal principles associated with each claim."  Id. at 448 (citation and internal

4

quotation marks omitted).  In other words, "[t]he exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition."  Mickens v. Taylor, 240 F.3d 348, 356 (4th Cir. 2001) (en banc).

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, the court may only grant relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  Moreover, a state court's decision involves an unreasonable application of clearly established federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a particular] case."  Id.

Under AEDPA, a federal court affords deference to a state court's resolution of a state prisoner's habeas claims.  See Bell v. Cone, 543 U.S. 447, 455 (2005).  To obtain a writ of habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 131 S. Ct. 770, 786–87

5

(2011). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a party "fails to make a showing sufficient to establish the existence of an element essential to his case," Rule 56(a) mandates entry of summary judgment against that party. Celotex v. Catrett, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the evidence is viewed in the light most favorable to the non-moving party with all justifiable inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## III.  DISCUSSION

### A.    Ground One

In Ground One, petitioner asserts that her right to confront witnesses was violated when the trial court permitted Greenville County Sheriff's Office Investigator Doug Kelly ("Kelly") to testify as to statements petitioner's live in boyfriend and co-defendant, Mark Martucci ("Martucci"), made to him during his interrogation. The magistrate judge recommends that the court hold that although the introduction of Martucci's statement was a violation of Bruton v. United States, 391 U.S. 123 (1968),[2] given the overwhelming evidence as to petitioner's guilt, petitioner was not prejudiced by the admission of Martucci's improperly redacted statement. R&R 9–11. Petitioner objects to the magistrate judge's recommendation, arguing that the finding of harmless error was an

---

[2]      In Bruton, the United States Supreme Court held that a limiting jury instruction was not an adequate substitute for a petitioner's constitutional right of cross-examination. 391 U.S. at 136.

"unreasonable determination of the facts in light of the evidence presented."  Pet'r's Objections 13.[3]

Kelly testified during a joint trial in which petitioner's co-defendant, Martucci, did not testify.  Kelly testified that Martucci told him "that he had been noticing bruising—bruises on [victim], and that he felt like she had been inflicting them."  R. at 420.  Kelly also testified that Martucci stated that "the only time he saw her do anything was spanking his hand."  R. at 421.  Kelly further testified that Martucci went on to say "that he was not worried, that he had 50,000 witnesses that would say he had done nothing.  And at that point, no other conversation took place."  R. at 421–22.

Petitioner argues that the admission of the statement violated her Sixth Amendment right to confront adverse witnesses because Martucci did not testify at the trial.  Petitioner raised this issue in her direct appeal.  The South Carolina Supreme Court found that, although Kelly's testimony violated Bruton, the admission of the evidence was harmless.  State v. Holder, 676 S.E.2d 690, 693–95 (S.C. 2009) ("[I]t was established beyond a reasonable doubt that Holder was guilty of the offense of homicide by child abuse independent of the challenged statement so the error was harmless in the context of the entire record.").

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him."  U.S. Const.

---

[3]    Petitioner does not object to the magistrate judge's finding that Kelly's testimony violated petitioner's Sixth Amendment right to confront adverse witnesses.  After a de novo review of the record, the court holds that the magistrate judge's R&R accurately summarizes the applicable law and adopts the magistrate judge's recommendation that the court hold that Kelly's testimony violated Bruton.

amend. VI, cl. 3. "The Supreme Court has held that a defendant's Sixth Amendment right to confront the witnesses against him is violated when an out-of-court statement made by his non-testifying co-defendant, which incriminates the defendant, is admitted into evidence at their joint trial." United States v. Holman, 27 F. App'x 210, 212–13 (4th Cir. 2001) (citing Bruton, 391 U.S. at 127–28). However, a court need not resolve an alleged Bruton violation when the alleged error is harmless. Id. "In deciding whether a constitutional error was harmless, a reviewing court must be satisfied that the error was harmless beyond a reasonable doubt." Id. at 213. "[I]n determining the harmlessness of a . . . constitutional error in a criminal trial, a federal habeas court asks whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" Wiggins v. Boyette, 635 F.3d 116, 121 (4th Cir .2011). (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). "If a court finds itself in 'grave doubt' about whether a trial error is harmless, it must grant habeas relief . . . . If a court finds itself without any grave doubt as to the harmlessness of error, it must deny habeas relief." Id. (quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995)).

In applying the harmless error standard, "we must ask whether it is clear beyond a reasonable doubt that the jury would have returned [a guilty] verdict[ ]" against petitioner even if Kelly's statement had not been introduced. Id. (quoting United States v. Blevins, 960 F.2d 1252, 1263 (4th Cir. 1992)). This analysis "requires a quantitative assessment of the likely impact of the error measured against the other evidence presented at trial." Id.

The homicide by child abuse statute in South Carolina is worded very broadly and provides that guilt may be established from an act or omission of abuse or neglect, or by

8

inflicting injury or <u>allowing the injury's infliction upon a child</u>. S.C. Code Ann. § 16-3-85(A) & (B) (emphasis added). In one of petitioner's statements to the investigators, she admitted to having knowledge of bruises, bite marks, and scratches on the victim in the time leading up to his death. R. at 525–27. Petitioner further stated that shortly before the child's death, she went into his bedroom and saw Martucci striking the child on his legs at least ten times while the victim cried for his mother. R. at 525. Petitioner also stated that she heard "a couple of thuds" when her co-defendant was with the victim in the other room the night before the victim died. R. at 526. Petitioner further provided that she saw Martucci putting scotch tape on the victim's mouth and laughing about it. R. at 528. Petitioner also stated that she noticed bruises on the victim's cheeks that were the exact size of the way she saw Martucci squeeze the child's cheeks with his hands. R. at 527. Petitioner also stated that she saw Martucci put the victim's head under the water during bath time numerous times while she watched the victim cry and grasp for air. R. at 528. During one incident, petitioner stated that she witnessed Martucci grab the victim by the back of the head and push his head down between his legs, covering his face with water. R. at 529. Petitioner's own statements indicate that she was aware that Martucci was abusing her son and she allowed him to do so.

Another witness testified that during one incident, Martucci pushed the victim's head under the water, causing him to "swallow water almost like he was choking . . . [a]nd then no sooner—he would barely catch his breath and he would do it again." R. at 359. The witness testified that petitioner was aware of these water dunking incidents. <u>Id.</u> There was evidence presented during the trial that petitioner was at home with the victim for at least two days prior to his death. R. at 322–23. Petitioner went to

9

work on the day of the victim's death, even though she was aware that the victim "had thrown up all night."  R. at 284, 324.  Dr. Michael Ward ("Dr. Ward"), an anatomic and forensic pathologist, testified regarding the extreme nature of the child's injuries, including trauma to the visceral organ of his abdomen with a tear in the small intestine, trauma to the pancreas, and bleeding in the abdominal cavity.  R. at 226.  Dr. Ward testified that persons in contact with the victim would have noticed the obvious symptoms of his injuries, for example, not appearing to be playful, declining food and drink, and appearing sick or injured.  R. at 225.  Dr. Ward also testified that the injuries were sustained over a period of time, as there were two traumas to the internal organs, the first of which had begun to heal.  R. at 214–27.

Further, numerous witnesses, including petitioner's neighbor and co-workers, testified to seeing bruises on the victim's body, a cut and swollen lip, and/or a burn mark, as well as other incidents where Martucci personally made physical contact with the victim. R. at 240, 249, 251–52, 280, 291, 295, 297, 306, 308, 317.  The emergency room nurse who admitted the victim noticed "marks on the right side of the victim's face that were a very odd pattern that looked very much . . . like knuckle prints," "multiple bruises on his legs, on his arms," black eyes, scratches and abrasions around his mouth, and a "purple black mark" on his back, "all in different stages of healing."  R. at 140–42.

In light of this overwhelming evidence, the court agrees with the magistrate judge that petitioner was not prejudiced by the admission of Martucci's improperly redacted statement.  It is clear beyond a reasonable doubt that the jury would have returned a guilty verdict against petitioner even if Kelly's statements had not been introduced at the

10

trial.  Therefore, any such error was harmless.  As such, petitioner's first ground for relief is without merit.

### B.    Grounds Two Through Six

In Grounds Two through Six, petitioner raises various claims of ineffective assistance of counsel.  During her trial, petitioner was represented by Bruce Byrholdt and David Phillips (collectively "counsel" or "petitioner's attorney").  Petitioner also raised these allegations in her application for post-conviction relief ("APCR").  The post-conviction relief court ("PCR court") rejected petitioner's claims and made relevant findings of fact and conclusions of law in accordance with S.C. Code Ann. § 17-27-80, which provides that "[t]he court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented."  See R. 980–94.[4]  Petitioner also raised these claims in her direct PCR appeal to the South Carolina Supreme Court.  See Respondent's Mot. Ex. 5.

The Sixth Amendment provides not only the right to counsel, but the right to effective assistance of competent counsel.  Hoffman v. Leeke, 903 F.2d 280, 285 (4th Cir. 1990) (citing Powell v. Alabama, 287 U.S. 45, 48 (1932)).  Where a prisoner's habeas petition alleges ineffective assistance of counsel, the district court must review the petition in accordance with both the Antiterrorism & Effective Death Penalty Act of 1996 ("AEDPA") and "through the additional lens of Strickland [v. Washington] and its progeny."  Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012).  Under Strickland,

---

[4]    The magistrate judge properly recited the PCR court's findings of fact and conclusions of law.  See R&R 12–24.  Therefore, the court will not recount them here, but will refer the parties to the relevant portions of the R&R and the record.

a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that this deficiency prejudiced the defense.  466 U.S. 668, 687, 694 (1984).  Under AEDPA, a writ of habeas corpus may only be granted when the underlying state court proceedings:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Harrington v. Richter, 131 S. Ct. 770, 783–84 (2011); Richardson, 668 F.3d at 138.

Because AEDPA and Strickland provide dual, overlapping standards for review of a state prisoner's habeas petition, the federal court must be doubly deferential to the state court decisions.  Richardson, 668 F.3d at 139 (citing Richter, 131 S. Ct. at 788). The court must determine "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788; see also Cullen v. Pinholster, 131 S. Ct. 1388, 1410–11 (2011). The court must be mindful that "an unreasonable application of federal law is different from an incorrect application of federal law."  Richter, 131 S. Ct. at 785 (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).  Under the doubly deferential standard described in Richter and Richardson, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Therefore, when an ineffective assistance of counsel claim is raised in a § 2254 habeas petition and was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable," not "whether defense counsel's performance fell below <u>Strickland</u>'s standard." <u>Harrington</u>, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself." <u>Id.</u>

### i.     Ground Two

In Ground Two, petitioner asserts that her counsel was ineffective in handling the state's witness James Darren Turner ("Turner"), the petitioner's ex-husband, by failing to object to testimony, failing to move to strike the testimony, failing to move for a curative charge, failing to move for a mistrial, and for characterizing petitioner as "not the best wife" during Turner's cross examination. The magistrate judge recommended that the court find that petitioner has failed to meet her burden of showing that her counsel was ineffective. R&R 28. Petitioner objects to the magistrate judge's recommendation, arguing that Turner's testimony was highly prejudicial. Pet'r's Objections 19.

Petitioner's trial attorney testified that there was nothing in Turner's statement that hurt petitioner, but rather, his testimony showed that she was a good mother. R. at 763–64. Petitioner's attorney also testified that with regard to whether petitioner knew who the victim's father was, the testimony did not hurt the petitioner and he saw no need to draw attention to the testimony by objecting to it. R. 765–66. Petitioner's attorney further testified that the testimony regarding Turner paying for the victim's funeral was not prejudicial to the petitioner and that the trial judge instructed the jury to disregard another question and answer regarding whether petitioner ever physically mistreated

13

Turner.  R. at 771–74.  Petitioner's counsel testified that he did not request a curative instruction because it would "ring the bell again."  R. at 774.  Regarding her attorney's statement that petitioner may not have been the best wife, her attorney testified that he wanted to emphasize that although they may have had their problems, she was a good mother.  R. at 775–76.

The court agrees with the magistrate judge that petitioner's claims of ineffective assistance that her attorney should have objected to certain testimony and/or not used the phrase "not the best wife" are purely speculative.  The court finds these speculative accusations insufficient to constitute ineffective assistance of counsel.  The Supreme Court in Strickland instructs courts to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland v. Washington, 466 U.S. 668 at 689 (1984).  The court agrees with the PCR court and finds, given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," that the alleged acts or omissions are not "outside the wide range of professionally competent assistance."  Id.  Therefore, petitioner's second ground for relief is without merit.

### ii.    Ground Three

In Ground Three, petitioner alleges that her counsel was ineffective for failing to reference evidence during his closing argument that petitioner had been sick the day before the victim died and therefore had a reasonable belief that the child had a similar illness.  Petitioner further contends that counsel was ineffective in failing to draw the jury's attention to the fact that the testimony of multiple state witnesses concerning

14

bruising in fact referenced only a few incidents recalled by multiple witnesses.  Petitioner

also raised the claims in her APCR.  The PCR court found that:

> [Petitioner] testified at trial that she was sick the day before the victim's
> death and had not gone to work.  [Petitioner] gave detailed testimony on
> both direct and cross-examination but never stated she believed the victim
> was suffering the same ailment. . . . [Petitioner's counsel] presented an
> organized and thorough closing argument in which he argued that the
> State had not proven the [petitioner's] guilt.  [Petitioner's attorney] never
> mentioned [petitioner's] previous illness as a reason for not checking on
> the victim before she went to work because this was not testified to at trial.
> Regardless, [petitioner's] testimony—including that she was ill the day
> before the victim died—was before the jury.  It is clear that, regardless of
> the strong argument put forth by trial counsel, the jury simply did not
> accept [petitioner's] version of events.

R. at 992.

The magistrate judge recommended that the court hold that this claim of

ineffective assistance of counsel fails on the merits because petitioner failed to meet her

burden.  R&R 28–30.  Petitioner objects to the magistrate judge's recommendation,

arguing that petitioner's attorney's "failure to properly summarize this testimony for the

jury in closing argument created the very real risk that the testimony would be construed

as establishing a pattern of abuse, which [p]etitioner should have been familiar with and

held accountable for, when it in fact did not."  Pet'r's Objections 21.

When a habeas petitioner questions the evidence summarized during a closing

argument, the court must determine whether, "after viewing the evidence in the light

most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307,

319 (1979).  "[C]ounsel has wide latitude in deciding how best to represent a client, and

deference to counsel's tactical decisions in his closing presentation is particularly

important because of the broad range of legitimate defense strategy at that stage."

Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003).  "Judicial review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas."  Id.; see also Jackson v. United States, 638 F. Supp. 2d 514, 572 (W.D.N.C. 2009) ("Closing arguments in summation must be considered in context, as a whole and with a highly deferential standard of review.").  "And when counsel in that summation focuses on a particular issue, there is a strong presumption that he did so for tactical reasons rather than sheer neglect."  Jackson, 638 F. Supp. 2d at 572.

The record demonstrates that petitioner's counsel made a comprehensive closing argument in which he argued that there was a lack of evidence that petitioner was responsible for the victim's abuse or neglect, that she was aware of the injuries leading to death, or that she had exhibited extreme indifference towards the victim.  R. 630–39.  Although petitioner argues that her attorney should have discussed that she believed her son had the same illness she suffered from the previous day and that the evidence of bruising concerned only a few incidents, these other potential arguments do not establish that her attorney's conduct was unreasonable.  Counsel reasonably chose to focus on Martucci, emphasizing that the petitioner was at work during the hours leading up to her son's death; therefore, counsel argued that petitioner could not have been responsible.  R. at 633–34.  Additionally, counsel chose to focus on pictures of the child taken in the weeks prior to his death, which displayed no bruising.  R. at 634–35.  The court finds counsel's conduct reasonable.  Petitioner further argues that her attorney should have highlighted that she believed that her son was suffering from the same illness that she alleged she had the day prior to his death.  However, petitioner never testified at the trial

16

that she believed her child suffered from the same illness, R. at 542–549, and there is no indication that trial counsel handled her testimony improperly.

Petitioner's attorney focused on creating reasonable doubt by highlighting the lack of evidence of petitioner's direct connection to the victim's death.  R. at 630–39.  The court finds that "he did so for tactical reasons rather than sheer neglect."  Jackson, 638 F. Supp. 2d at 572.  In light of the "highly deferential-and doubly deferential" standard when reviewing defense attorney's conduct during closing arguments through the lens of federal habeas, the court finds that this claim of ineffective assistance fails.  See Yarborough, 540 U.S. at 5–6.  Therefore, the state court's decision was not unreasonable.

### iii.     Ground Four

In Ground Four, petitioner argues that counsel was ineffective for failing to call numerous character witnesses during her trial that were readily available to testify on her behalf.  The PCR court found that there was no prejudice from the lack of character witness testimony in light of the overwhelming evidence of abuse and neglect presented during the trial.  R. at 988–89.  The PCR court noted that the witnesses who testified all stated that they had observed the petitioner's interactions with the victim and that the petitioner had a general reputation for truth and veracity.  R. at 989.  The magistrate judge agreed and recommended that this court find that this claim should be dismissed.  R&R 30–32.  Petitioner objects to the magistrate judge's recommendation, arguing that the magistrate judge's finding fails to take into account "the degree to which [p]etitioner's credibility was the key question before the jury in the trial."  Pet'r's Objections 23.

17

As more fully set forth above, counsel decided to focus on the lack of evidence directly tying petitioner to the victim's death rather than character witness testimony. During the PCR hearing, counsel testified that the defense team discussed introducing character witnesses on the petitioner's behalf but that they "felt comfortable with what [they] had in terms of the witnesses who did testify that [they] were drawing out enough character evidence from the witnesses who did testify for the defendant." R. at 816. Counsel testified that the defense team chose to focus on "the hard evidence" of "how it happened or how [petitioner] could not have known about it happening." R. at 816. Counsel did call petitioner's father and uncle to testify. R. at 818. Counsel testified that rather than focusing on witnesses in the community who had the opportunity to observe petitioner with the child, they focused on "the events that happened more proximate to the time of the child's death and the date of the child's death." R. at 820. Counsel also testified that he met with petitioner, her parents, and the pathologists, and went over the discovery material provided by the state. R. at 756. Counsel testified that the defense team probably spent between 150 and 200 hours in preparation for the case during the month before the trial. R. at 823–24; 840.

First, the court agrees with the magistrate judge that petitioner has failed to meet her burden of proof that trial counsel was ineffective for not calling character witnesses from the community. However, even if counsel's conduct was unreasonable, the court finds that, given the overwhelming evidence of her knowledge that Martucci was abusing her son—as fully set forth above—petitioner did not suffer any prejudice. See, e.g., Tucker v. Ozmint, 350 F.3d 433, 445 (4th Cir. 2003) (recognizing that trial counsel's failure to present impeachment evidence against prosecution expert did not prejudice

18

petitioner, where expert's testimony was cumulative and, "[c]onsidering the aggravating and mitigating circumstances present in this case," confidence in outcome of trial was not undermined); Byram v. Ozmint, 339 F.3d 203, 211 (4th Cir. 2003) (holding that there was no prejudice resulting from counsel's failure to present additional information about petitioner's childhood, where "the evidence presented before the [state post-conviction relief] court was largely cumulative").  Because the state court's decision was not unreasonable, this claim fails on the merits.

### iv.    Ground Five

In Ground Five, petitioner contends that her counsel was ineffective for failing to introduce a SLED forensic Services Lab report documenting that there was a mixed DNA sample taken from bite marks found on the victim which yielded DNA results that were not inconsistent with the victim and DNA from an unknown individual with XY Amelogenin—an unknown male contributor.  The magistrate judge recommended that the court dismiss this claim.  R&R 32–33.  The PCR court held that the bite mark on the victim was one of the more minor injuries the victim suffered and did not factor into the cause of death.  R. at 989.  The PCR court further held that, based on the overwhelming evidence of the victim's serious injuries, there was no reasonable probability of a different result if the DNA report had been admitted into evidence.  Id.  Petitioner objects to the magistrate judge's recommendation, arguing that it improperly accepts defense counsel's explanation but ignores his other testimony.  Pet'r's Objections 25–26.  Petitioner argues that the evidence that an unknown male was involved in the circumstances that lead to the child's death "may well have turned the tide" for petitioner's defense.  Id. at 26.

Petitioner's trial counsel's cross examination of Dr. Ward focused on the timing of the victim's injury and attempted to show that the injuries occurred while petitioner was at work. Petitioner's trial counsel testified at the PCR hearing that the SLED report was not valuable because the bite mark did not kill the child, nor had the State tried to claim that petitioner was responsible for the bite mark. R. at 796. They further testified that Dr. Ward was not going to be helpful for their case in any way because when they met with him prior to the trial, Dr. Ward told them that it was the worst case of child abuse he had ever seen and that the victim's vital organs had been ripped away. R. at 791–92.

Petitioner's argument is purely speculative and ignores both the abundant evidence of the horrific injuries that caused the child's death and the fact that the bite mark did not cause the victim's death. See Richardson v. Branker, 668 F.3d 128, 140 (4th Cir. 2012) ("'[T]he likelihood of a different result must be substantial, not just conceivable.'" (quoting Harrington v. Richter, 131 S.Ct. 770, 792 (2011))); Chambers v. Sec'y Penn. Dep't of Corr., 442 F. App'x 650, 657 (3d Cir. 2011) ("An argument that 'rests almost entirely upon mays and could haves' does not satisfy the requirements for habeas relief." (quoting Rice v. Hall, 564 F.3d 523, 526 (1st Cir. 2009))). Given that the bite mark did not cause the child's death, there is no reasonable probability that the outcome would have been different had trial counsel introduced the DNA evidence of from the bite mark. The court agrees with the PCR court and the magistrate judge that there is no prejudice in light of the overwhelming evidence of petitioner's complicity in the death of her son. Therefore, Ground Five fails on the merits.

20

v.      **Ground Six**

Lastly, in Ground Six, petitioner argues that trial counsel was ineffective for failing to object to a confusing and incomplete answer given by the trial judge in response to a question from the jury.  The PCR court held that petitioner failed to meet her burden of proof and that there was no prejudice because the jurors answered in the affirmative when asked whether the court's response answered their questions.  R. at 691. The magistrate judge recommended that the court find that petitioner has failed to demonstrate that counsel's failure to object was ineffective or that the state court's decision was unreasonable.  R&R 34–36.  Petitioner objects to the magistrate judge's recommendation, arguing that "[t]he answer to the jury question did not answer their question properly because it did not tell them that they did not have to convict both co-defendants in order to convict one."  Pet'r's Objections 29.  Petitioner argues that the response "could easily have been interpreted by the jury to mean that they had to find both co-defendants guilty or both innocent."  Id.

According to the record, during jury deliberations, the jury sent the following question to the court:  "Does one verdict apply to both Defendants or could we render two different verdicts?"  R. at 689, 691.  The trial judge provided the following response: "The answer to that question is, yes, you can find each Defendant guilty under Section A, or you can find them both under – (A)(1) or both under (A)(2), or you can find one guilty of one and one the other."  R. at 691.  During the PCR hearing, defense counsel testified that at the time, he was happy with the question, but that "in hindsight, [he] should have [objected]."  R. at 802.  However, he also testified that he thinks the judge answered the question the way it was asked.  Id.  When asked whether there was a particular reason

21

why he did not object to the answer, co-counsel responded: "No, other than that I think that my mind unfortunately went to what I think the jury was asking, the essence of the question rather than the specifics of how it was worded. I think I probably made the same error in judgment in hindsight" as co-counsel. R. at 827.

However, on habeas review, counsel's performance should not be evaluated through the lens of hindsight. See McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, [the court] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance."). As fully set forth above, there was overwhelming evidence of the petitioner's knowledge that he son was being abused. Further, the jurors answered in the affirmative that the court's response answered their question. Lastly, the trial judge also instructed the jury that a verdict of "not guilty" was possible and had provided the jury a verdict form with the option to fill out a "not guilty" verdict. Therefore, in light of the highly deferential standard, the court agrees with the magistrate judge that the state court's ruling was not unreasonable. Petitioner has not carried her burden of demonstrating that her counsel's performance fell below a standard of reasonableness or that the failure to object to the answer caused her prejudice.

Accordingly, petitioner has not shown that the PCR court's rejection of her ineffective assistance of counsel claims was contrary to, or an unreasonable application of, clearly established federal law; nor has petitioner shown the PCR court's adjudication of the claims resulted in a decision that was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Therefore, the court finds that Grounds Two through Six are wholly without merit.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R,

**DENIES** the petition for a writ of habeas corpus, and **GRANTS** respondent's motion for

summary judgment.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied

because petitioner has failed to make "a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 8, 2016**
**Charleston, South Carolina**

23